**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **RONALD STILLMAN,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 07-849 (KSH)** |
| **v.** | : | |
| | : | |
| **STAPLES, INC.,** | : | **OPINION** |
| | : | |
| | : | |
| **Defendant.** | : | |

**SHWARTZ, United States Magistrate Judge**

## I.  INTRODUCTION

This matter comes before the Court on: (1) the defendant's motion for judgment notwithstanding the jury verdict pursuant to Federal Rule of Civil Procedure 50, or in the alternative, a motion for a new trial pursuant to Federal Rule of Civil Procedure 59, (2) plaintiffs' cross-motion for liquidated damages; and (3) the defendant's request to strike plaintiffs' application for prejudgment interest if liquidated damages are awarded.  For the following reasons, the defendant's motion is denied, the plaintiffs' cross-motion for liquidated damages is granted, and the defendant's request to strike plaintiffs' application for prejudgment interests is granted.

## II.  PROCEDURAL HISTORY

On February 16, 2007, Ronald Stillman ("Plaintiff") filed a collective action claim individually and on behalf of all persons similarly situated in the United States District Court for the District of New Jersey against Staples, Inc. ("Defendant") pursuant to, among other things,

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  Compl. at ¶¶ 1, 2.  Plaintiff alleged

that, although hired as a manager, his primary duties were not managerial and involved hourly

tasks, he worked more forty hours per week, and was not paid overtime.  Id. at ¶¶ 26, 27.  The

plaintiff alleged that defendant willfully violated the FLSA, and that plaintiff and all other

similarly situated employees are entitled to damages and injunctive relief.[1]  Id. at ¶¶ 37-40.  On

March 7, 2008, the Court granted plaintiff's motion to certify this case as a collective action and

set a deadline for eligible sales managers to "opt in."  Docket No. 261.

Three hundred forty two (342) individuals joined this collective action as opt-in

plaintiffs. Following the conclusion of discovery and pretrial motion practice, a six-week jury

trial ensued.  During the trial, plaintiffs called the following thirteen former Staples sales

managers to serve as representative witnesses:  Jeffrey Ciotti, Monica Denise McDavid, Darrell

Gaines, Judith Arlene Garick, Jonathan Scott Boone, Shannon McCausland, Brian Bright,

Jeremy Biggs, N'Gai George, Brett Stone, Ronald Stillman, Edward Carter and Brian Baca.[2]  See

P1's Case-in-Chief Trial Witness List at 2.  In addition, plaintiffs called several Staples corporate

executives including: William M. Bailey, Director of Human Resources, James Guillemette,

Director of Operations, Connie Lennick, Vice President of Human Resources, and Demos

---

[1]Although such relief was embodied in the Complaint and the plaintiffs made an oral application for declaratory relief after the jury returned the verdict, the plaintiffs proposed judgment and their submissions make no reference to any equitable relief and therefore, none will be entertained.

[2] The deposition testimony of Scott Wood, a non-party former Staples Sales Manager, was read into the record during plaintiffs' case-in-chief.

Parneros, President of U.S. Stores.[3]  During its case-in-chief, defendant called the following

Staples managers and corporate executives as witnesses: Jeffrey Walker, General Manager of

Staples, Rose Tranelli, hourly associate, Matthew John Setterlund, Director of Merchandising

Implementation, Mark Chizek, District Manager, Andrew Seto, Director of Compensation, Mary

Norton, Operations Manager, Stephen Lemieux, District Manager, Michael Moselsky,

Operations Manager, Deanna Ray-McDonough, Management Recruiter, Maureen Ostacher,

Human Resources Manager, Thomas McCoy, General Manager, and Kimberly McNerney, Sales

Manager.  In addition, defendant called Ali Saad Ph.D. as an expert witness who testified as a

labor economist who collected and analyzed information about the kind of work Staples sales

managers perform and the time spent doing it.[4]

    The jury returned a verdict on February 19, 2009.  The jury found that: (1) the plaintiffs

met their burden of proving by a preponderance of the evidence that they worked in excess of

forty hours per week and were not paid overtime; (2) the defendant failed to meet its burden of

proving by a preponderance of the evidence that the plaintiffs were exempt employees under the

FLSA; (3) the plaintiffs met their burden of proving by a preponderance of the evidence that the

defendant's failure to pay overtime to plaintiffs was willful; and (4) the defendant failed to meet

its burden of proving by a preponderance of the evidence that plaintiffs and defendant mutually

agreed to a fluctuating work week method of pay.  See Docket Entry No. 691.  Through separate

interrogatories, the jury also awarded specific monetary amounts to compensate each plaintiff for

---

[3] Portions of the depositions of several witnesses, including, Susan Hoyt,  Anthony
Paniszczyn, Janet Gikas, and Joseph Mazzulo, were read into record.

[4] Plaintiffs also called several witnesses during their rebuttal case.

the unpaid overtime hours worked, which totaled $2,460,650.61.

After trial, defendant's filed a motion under Rule 50 for judgment as a matter of law or, in the alternative, for a new trial under Rule 59 and the plaintiffs filed a cross-motion for liquidated damages and requested prejudgment interest.

A.  Rule 50 Standard

Under Fed. R. Civ. P. 50(a), the Court may grant a motion for judgment as a matter of law against a party if there "is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  Judgment as a matter of law should only be granted if the record is actually deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.  Raiczyk v. Ocean County Veterinary Hospital, 377 F.3d 266, 269 (3d Cir. 2004). The test is not whether there is literally no evidence supporting the successful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict.  Johnson v. Campbell, 332 F.3d 199, 204 (3d Cir. 2003).  The district court must deny a defendant's directed verdict motion under this standard "if there is evidence reasonably tending to support the recovery by the plaintiffs as to any of its theories of liability."  Bielevicz v. Dubinon, 915 F.2d 845, 849 (3d Cir. 1990).

B.  Rule 59 Standard

When a court denies a motion for judgment as a matter of law under Rule 50, it may still grant an alternative motion for a new trial under Rule 59.  Roebuck v. Drexel University, 852 F.2d 715, 735 (3d Cir.1988).  Rule 59 states that a court may "grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court . . ." Fed. R. Civ. P. 59(a).  Rule 59 "does not cite specific grounds for a new

-4-

trial, [but] there are many reasons why a new trial may be warranted. The most commonly raised reasons are: that there was prejudicial error of law, that the verdict is against the weight of the evidence, that the verdict is too large or too small, that there is newly discovered evidence, that conduct of counsel or of the court has tainted the verdict, or that there has been misconduct affecting the jury." Bentley v. Atlantic County, N.J., Civ. No. 05-2942, 2009 WL 530880, *5 (D.N.J. March 3, 2009) (citing  11 C. Wright, A. Miller & R. Kane, Federal Practice and Procedure § 2805, at 55 (2005)); Lightning Lube, Inc. v. Witco Corp., 802 F.Supp. 1180, 1186 (D.N.J.1992).  The decision to grant or deny a new trial is confined almost entirely to the discretion of the trial court.  Blancha v. Raymark Indus., 972 F.2d 507, 512 (3d Cir. 1992) (citing Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)). The Third Circuit, however, has established different levels of discretion depending on the proffered grounds for a new trial. Bentley, 2009 WL 530880 at *5 (citing  Klein v. Hollings, 992 F.2d 1285, 1289-90 (3d Cir.1993)).  For instance, "'the district court's latitude on a new trial motion is broad when the reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court, e.g. evidentiary rulings, or prejudicial statements made by counsel.'" Bentley, 2009 WL 530880 at *5 (internal citations omitted).  The discretion is "narrower when the underlying reason is that the verdict is against the weight of the evidence . . . [and] [is] proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Id.

Here, the defendant moves for judgment as a matter of law on the following three grounds: (1) the plaintiffs did not prove damages for non-testifying plaintiffs, (2) there is insufficient evidence to show that the defendant willfully violated the FLSA, and (3) the

plaintiffs failed to present representative evidence.  In the alternative, the defendant moves for a new trial on the ground that the Court's evidentiary rulings on non-testifying plaintiffs' salary was erroneous and that it confused the jury.  The Court will next address each of these arguments and the facts relevant to them.

### III.  DISCUSSION

A.  Evidence of Non-Testifying Plaintiffs' Damages

      1. Facts

The Court will first address the defendant's claim that plaintiffs did not prove the damages that the non-testifying plaintiffs sustained.  In this case, discovery closed on September 2, 2008. Order dated July 1, 2008.  The deadline to raise discovery disputes was December 5, 2007. Order dated November 30, 2007.  Plaintiffs did not bring to the Court's attention any outstanding discovery disputes concerning salary information during the discovery period.

At the final pretrial conference in October 2008, however, plaintiffs raised with the Court for the first time that they sought the salary information from the defendant for the non-testifying plaintiffs.  During that conference, plaintiffs did not tell the Court that they had requested such information during discovery nor did they disclose defendant's response to such a request. Because it appeared that plaintiffs had not sought such information during discovery, the defendant was not ordered to produce the information at that time.  As a result, the plaintiffs had not obtained the salaries of non-testifying plaintiffs for use during their case.

During their case-in-chief, the plaintiffs presented salary information for only the thirteen testifying plaintiffs, Tr. dated Feb. 11, 2009 at 93, and elicited evidence about the average sales

manager salary from Staple's officials.  See Tr. dated Jan. 26, 2009 at 9.108; Tr. dated Jan. 27, 2009 at 10.49-10.50; Tr. dated Feb. 2, 2009 at 14.175.  In lieu of presenting salary information for the non-testifying plaintiffs, plaintiffs argued that the average of the thirteen testifying plaintiffs' salaries should be calculated and used to represent the salaries of all non-testifying plaintiffs. Tr. dated Feb. 11, 2009 at 92.  On several occasions throughout pretrial and trial proceedings, the Court requested legal authority supporting plaintiffs' position that they could rely on the average of testifying plaintiffs' salaries to prove the salary information for non-testifying plaintiffs in a case where actual salary information could have been sought and obtained from defendant. Plaintiffs failed to produce any legal authority supporting their proposed methodology. Id.  Plaintiffs rested their case without introducing evidence of the specific salaries for each of the non-testifying plaintiffs.

On February 11, 2009, after plaintiffs had rested their case-in-chief, plaintiffs brought to the Court's attention for the first time that a discovery demand for non-testifying plaintiffs' salaries was made during the discovery period, the defendant agreed to provide the information, and that the defendant never provided the information sought. Tr. dated Feb. 11, 2009 at 132. Specifically, plaintiffs informed the Court that in July of 2007, they sent a demand to defense counsel requesting "computerized and machine-readable databases, reports, all other written documentation containing any of the following payroll information regarding assistant store sales managers, whether part-time, full-time, permanent or temporary, from February 8th to the present." Id.  Defendant responded to the plaintiff's July 2007 request by agreeing to produce the information, "subject to appropriate confidentiality protections if and when this case is certified as a collective action for any individuals who opt in to participate as plaintiffs." Tr. dated Feb.

11, 2009 at 133 (emphasis added).  Despite this representation, the defendant did not produce the salary information for the plaintiffs who opted in and plaintiffs never pursued it.

As a result of defendant's failure to respond to a proper discovery demand and plaintiffs' failure to pursue the information during discovery, the Court was faced with the issue of how to address plaintiffs' failure to pursue their discovery demand in a timely manner and defendant's failure to fulfill its representation that it would produce the salary information for the non-testifying plaintiffs as promised.  Tr. dated Feb. 11, 2009 at 173.  Although plaintiffs conceded that they had no reason for failing to pursue the discovery and hence had not demonstrated good cause to open discovery to obtain the salary information and they failed to meet the showing typically required to support a request to reopen the evidence, the Court determined that fairness, finality, and the need to avoid a miscarriage of justice required that discovery be reopened, the salary information be produced, and the plaintiffs' case be reopened to allow plaintiffs to introduce the evidence concerning the salary of the non-testifying opt-in plaintiffs.  Tr. dated Feb. 11, 2009 at 187.  To remedy plaintiffs' inexplicable default and the defendant's failure to produce the information promised, the Court gave defendant the option to either produce the individual salaries or accept a stipulation that limited the salaries of the non-testifying plaintiffs to $35,000, the lowest salary of all testifying plaintiffs.  Tr. dated Feb. 11, 2009 at 189.  Using the $35,000 figure had the effect of limiting the total damages plaintiffs could recover as it capped the salary for each non-testifying plaintiff to the lowest salary earned by the thirteen testifying plaintiffs.  The defendant elected to accept the $35,000 figure in lieu of producing the actual salary information for each non-testifying plaintiff, subject to the objections that the discovery period was closed, the plaintiffs did not obtain this information in a timely manner, and

that the plaintiffs did not show that the record should be reopened to introduce the salary

information.  Tr. dated February 13, 2009 at 33:6-10.

2.  Summary of Arguments

Defendant argues that the Court should grant Staples judgment as a matter of law as to

the claims of all non-testifying plaintiffs because: (1) plaintiffs had a full opportunity to present

evidence regarding the individual salaries of all non-testifying plaintiffs in their case-in-chief but

failed to do so; (2) the jury had no legally sufficient evidentiary basis from which to calculate

damages for all non-testifying plaintiffs because the salary information upon which they relied

was presented to them via a jury instruction, and not through evidence presented in court; and (3)

the alternative mechanism the Court fashioned for resolving the insufficiency of plaintiffs' proof

was not legally justified because (i) plaintiffs did not request individual salary information in

discovery, but rather sought anonymous salary information for persons who had not yet joined

the action; (ii) plaintiffs did not establish good cause to extend the discovery deadlines and the

deadline to present discovery disputes to the Court; and (iii) plaintiffs should not have been

permitted to reopen their case because the plaintiffs did not offer a reasonable explanation for

failure to present the evidence in their case-in-chief.

Defendant also argues that, in the alternative, the Court should grant Staples a new trial

because the jury instruction on the salary information for the non-testifying plaintiffs confused

the jury and unfairly affected its determination of Staples' liability with respect to all plaintiffs.

In response, the plaintiffs argue that the dependant's motion should be denied because:

(1) there was legally sufficient evidence of damages to support the jury verdict and charge

because the totality of evidence presented during the trial supports using $35,000 as the salary for

the non-testifying plaintiffs given that (a) each testifying plaintiff testified that their salary exceeded $35,000, (b) the defendant's own witnesses repeatedly testified that the average salary for sales managers was $43,000, and (c) once the plaintiffs satisfied their burden of proof, the Court is vested with the discretion to determine the most accurate amount to be awarded; (2) the plaintiffs established good cause to modify the discovery schedule and to do so is within the Court's discretion; (3) the Court properly allowed plaintiffs to reopen their case to introduce evidence of the non-testifying plaintiffs' salary because: (a) the plaintiffs proffered a reasonable explanation for the failure to present damages information in their case-in-chief based upon a mistake of law concerning the ability to use averages alone, (b) the salary information of the non-testifying plaintiffs was relevant, admissible, and helpful to the jury, (c) there was no unfair surprise in allowing this evidence to be admitted since the Court gave the defendant the choice to stipulate to the $35,000 salary or using the actual salary, and (d) allowing the admission of the non-testifying plaintiffs' information did not imbue the evidence with distorted importance, prejudice the defendant's case, or preclude the defendant from refuting the additional evidence offered; (4) there is nothing in the record that supports a finding that the salary charge was confusing or affected the jury's determination that defendant violated the FLSA in classifying sales managers as exempt, and (5) if there was any confusion on the part of the jury, it was caused by the defendant's failure to present evidence of the salary range of hourly sales associates.

In reply, the defendant argues that: (1) the plaintiffs took a gamble that salary information could be representative and thus did not establish good cause to open discovery, (2) the defendant objected to the reopening of discovery and reopening the plaintiffs' case to present information

about salaries to the jury, and (3) the Court erred when it permitted plaintiffs to reopen discovery, present a discovery dispute, and reopen the case after both sides rested, which all resulted in prejudice to the defendant.

        3.  <u>Analysis</u>

    i.  <u>Reopening Discovery</u>

In this case, discovery closed on September 2, 2008. Order dated July 1, 2008.  The deadline to raise discovery disputes was December 5, 2007. Order dated November 30, 2007. Plaintiffs did not bring to the Court's attention any outstanding discovery disputes concerning salary information by this date.  After both parties concluded their cases in chief, however, the plaintiffs for the first time brought to the Court's attention that they had sought salary information for non-testifying opt-in plaintiffs during the discovery period and that defendant represented that it would produce the salary information but had not done so.  As such, the Court had to decide whether or not to permit the reopening of discovery, allow plaintiffs to ask the Court to direct defendant to produce the information, and compel defendant to do so.

Federal Rule of Civil Procedure 16 provides that a court shall enter scheduling orders to allow for "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." <u>Harrison Beverage Co. v. Dribeck Importers, Inc.</u>, 133 F.R.D. 463, 469 (D.N.J. 1990) (quotations omitted); <u>see</u> <u>also</u> <u>Newton v. A.C. & S., Inc.</u>, 918 F.2d 1121, 1126 (3d Cir. 1990) (stating that the purpose of Rule 16 is to provide for judicial control over a case, streamline proceedings, maximize the efficiency of the court system, and actively manage the timetable of case preparation to expedite the speedy and efficient disposition of cases).  Rule 16

further provides that the party seeking modification of a pretrial scheduling order must show

"good cause" for a court to change the Order, Fed. R. Civ. P. 16(b), and that a court may modify

a Rule 16 scheduling order upon "a showing of good cause if it cannot reasonably be met despite

the diligence of the party seeking the extension." Fed. R. Civ. P. 16, Advisory Committee's

Note, on Subdivision (b). Allowing extensions in the absence of "good cause" would "deprive

trial judges of the ability to effectively manage the cases on their overcrowded dockets" and

severely impair the utility of scheduling orders. Koplove v. Ford Motor Co., 795 F.2d 15, 18 (3d

Cir. 1986).

Despite the plaintiffs' inability to show that good cause existed to reopen discovery, the

Court permitted discovery to be reopened to guard against unfairness, injustice, and prejudice.

The Court reasoned that "while there is absolutely no good cause for why this wasn't raised, I

find that there is a reason why the Court should consider and allow this issue to be teed up and

for the Court to treat it as if it had been timely raised. And the reason why I find that to be

appropriate is . . . there was clearly a request for the information, a representation it would be

produced, [it is] information in the possession of the defendants, information that is not

prejudicial to the defendant at all. . . . [t]he information really isn't that disputable. It's relatively

accessible. And, therefore, the Court will permit it to be considered as a discovery dispute." Tr.

dated Feb 11, 2009 at 184-85. The Court further reasoned that "[h]aving passed that issue,

despite the absence of good cause, the Court finds that this would be the type of information that

.. . would have certainly been required to be produced in short order . . . had the dispute been

raised in a timely fashion." Id. Thus, despite the absence of good cause for not having pursued

the sales information during discovery, the Court found fairness required the reopening of

discovery to require production of relevant information known and accessible to defendant and nothing the defendant has presented in this motion changes this conclusion.

ii. <u>Reopening Plaintiffs' Case in Chief</u>

The Court next addresses defendant's argument concerning the reopening of the trial record.  For the reasons stated at trial and herein, it was proper to permit the plaintiffs to reopen the record to add the salary information concerning the non-testifying plaintiffs.  "Once the evidence has been closed, whether to reopen for submission of additional testimony is a matter left to the trial court's discretion."  <u>United States v. Watson</u>, 244 Fed. App'x. 484, 488 (3d. Cir. 2007) (citing <u>United States v. Jones</u>, 880 F.2d 55, 59 (8th Cir.1989)); <u>Friends of Coral Bay v. Reliance Housing Foundation, Inc.</u>, Civ. No. 2007-20, 2008 WL 467391, *3 (D.VI. Feb. 1, 2008) (citing <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 331 (1971) (noting that "a motion to reopen to submit additional proof is addressed to the [court's] sound discretion").  The Court of Appeals for the Third Circuit has examined this issue in different contexts including suppression hearings and civil trials, and recently set forth the standard as follows:

> When deciding whether to permit reopening, the court's focus is on whether the party opposing the reopening would be prejudiced if reopening is permitted.  A critical factor in evaluating prejudice is the timing of the motion to reopen. . . [If] the motion to reopen comes at a stage in the proceedings where the opposing party will have an opportunity to respond and attempt to rebut the evidence introduced after reopening, it is not nearly as likely to be prejudicial as when reopening is granted after all parties have rested, or even after the case has been submitted to the jury.  In exercising its discretion, the court must also consider the character of the testimony and the effect of the granting of the motion.  The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury [in resolving the issue] . . . . Further, [t]he party moving to reopen should provide a reasonable explanation for failure to present the evidence [initially]. . . . [T]o properly exercise its discretion, the district court must evaluate the offered explanation and determine if it is both reasonable and adequate to explain why the government initially failed to introduce evidence that may have been essential to

-13-

meeting its burden of proof.

United States v. Keyes, Civ. No. 05-1684, 2007 WL 108295, * 6 (3d Cir. Jan. 17, 2007)(internal citations and quotations omitted). In short, the Court "consider[s] a motion to take additional testimony in light of all the surrounding circumstances and grant or deny it in the interest of fairness and substantial justice." Friends of Coral Bay, 2008 WL 467391 at *3 (quoting Skehan v. Bd. of Trs. of Bloomsburg State Coll., 590 F.2d 470, 478 (3d Cir.1978)). A trial court does not abuse its discretion when the request to reopen the record is reasonable and the opposing party is not prejudiced by the presentation of additional evidence. United States v. Ramirez-Gonzales, 116 Fed. App'x. 369, 372 (3d Cir. 2004).

Here, the Court exercised its discretion to open the record to allow the introduction of the salary information based upon the fact that not doing so could lead to an unjust result to the parties and permitting the presentation of the evidence did not unfairly prejudice the defendant. The information was accessible and well-known to the defendant and plaintiffs' need for it is not at all surprising as the case is all about unpaid wages for work performed. Thus, allowing its use resulted in no unfair surprise to defendant. Moreover, the defendant could have sought to reopen its case to address the evidence if it believed it needed to do so. Finally, the production of the information enabled to the jury to have all of the information it needed to reach a final decision on all issues presented during the lengthy trial. Thus, given that the fact this relevant information was sought, promised, well known to the defendant, and production did not result in surprise or prejudice to the defendant, and presenting the evidence to the jury avoided a miscarriage of justice and ensured finality, allowing the plaintiffs to reopen their case was factually and legally proper.

-14-

As to the sufficiency of the salary evidence, the record indicates that there was sufficient evidence to calculate damages on behalf of the non-testifying plaintiffs.  The Court gave the parties a choice of either producing the actual salary information for all the non-testifying plaintiffs or accepting a stipulation that $35,000 was the salary to be used to calculate the damages for non-testifying plaintiffs.  See e.g., Tr. dated Feb. 11, 2009 at 189-90. (where the Court asked the defendant "[w]ould you like to give them a stipulation in lieu of going through your exhibits?").  The defendant elected to use the $35,000 figure, the lowest figure presented at trial, as the salary for all non-testifying plaintiffs, in lieu of producing the actual, and undoubtably higher, salary information. Tr. dated Feb. 13, 2009 at 33:6-10.  As such, the defendant stipulated to the $35,000 embodied in the jury instruction, the stipulated information was presented to the jury during the evidentiary portion of the case, see Tr. dated Feb. 17, 2009 at 45:7-13, and thus the jury has sufficient information upon which to award damages.

Moreover, the $35,000 figure was the lowest annual salary about which evidence was presented and hence was based upon evidence offered at trial.  The Court proposed the $35,000 figure to remedy the neglect on the part of both parties of their obligations relating to this information.  The defendant represented to the plaintiffs that it would produce salary information for any plaintiff who opted in.  The plaintiffs failed to follow-up on defendant's representation and bring to the Court's attention the deficiency by the deadline.  Thus, the Court was confronted with a scenario in which both parties were dilatory and such a revelation only became apparent one month into trial and after the plaintiff rested.  As a result, the Court was forced to fashion a solution that reflected the culpability of both parties while simultaneously ensuring fairness and justice to the clients, the jury, and the public.  Thus, while the plaintiffs did not show good cause

to extend or reopen discovery, the Court's solution to briefly re-open discovery to permit defendant to produce the salary information it had agreed to produce or accept a stipulation and permit the plaintiffs to open their case to enter the evidence, which included a decision by the defendant to stipulate to the $35,000 figure in lieu of producing the actual salary information, was practical in light of the parties culpability and the procedural posture of the trial and avoided a manifest injustice. For all these reasons, the record has sufficient evidence upon which the jury could use the $35,000 salary figure for the non-testifying plaintiffs and the Court's decision to allow such evidence to be presented was based upon specific reasons and facts in the record and did not prejudice the defendant.

The Court also denies the defendant's motion for a new trial based upon rulings about the non-testifying plaintiffs' salary for the same reasons it denied its motion for judgment notwithstanding the verdict. First, while the plaintiffs did not demonstrate good cause to reopen discovery, the defendant was dilatory in producing documents it represented it would produce. Second, the defendant elected to stipulate to, and thereby allow the jury to consider, the $35,000 figure, rather than incurring the expense associated with retrieving the actual salary information for the non-testifying plaintiffs. Had the defendant kept its promise to produce the documents when it said it would, the defendant would have expended considerable resources to secure the salary information. Third, and relatedly, the $35,000 figure to which the defendant agreed is the lowest possible number from the salary ranges mentioned at trial and is significantly lower than even the average salary its corporate officials identified at trial. As such, the defendant chose an avenue that significantly limited its damages exposure. In light of the facts that the defendant saved resources in retrieving the salary information and significantly lowered its damages

exposure as a result of the stipulation, the Court finds that the defendant was not prejudiced.

In addition, there is nothing in the record to suggest that the $35,000 instruction was confusing to the jury or that it lead to the jury considering the $35,000 figure for liability purposes.  The defendant's assertion that the figure influenced the jury's liability decision relies on a communication from the jury that asked the following question: "Pg 26 of the Instructions state at [the] bottom of [the] fist paragraph that '. . . .  earn little more than non exempt employees . . .' Do we have a definition for little more?" Docket Entry No. 680.  A review of the instruction to which the jury's question refers reveals that the question sought a definition of words within the instruction that set forth the factors for the jury to consider in determining if the primary duty of plaintiffs was managerial.  The question focused on the following portion of the instruction: "[i]f, however, such sales managers are closely supervised and earn little more than the nonexempt employees, then the sales managers generally would not be employees whose primary purpose would be management."  Tr. dated Feb. 17, 2009 at 105:7-10.  Thus, the jury's inquiry focused on the wages paid to hourly workers for which no evidence was presented.  The use of the $35,000 salary figure, or any other figure for that matter, would not have answered this question and hence could not have caused confusion.  Moreover, even if the jury used the $35,000 figure to calculate an hourly rate to make a determination about whether it reflected "little more" than the amount earned by non-exempt employees, this is a risk the defendant assumed when it chose to stipulate to the lower $35,000 figure for damages instead of producing the information for all non-testifying plaintiffs, which would have led to a higher figure.  Relatedly, the defendant was free to counter the Court's suggestion of $35,000 with the higher figure it now suggests in its brief if it were really concerned that a relatively small difference

between the $35,000.00 figure and the figure it proposes would have unduly influenced the jury

to conclude that the managers made "little more" than an hourly employee.[5]  The defendant had a

choice to produce information or ask the Court to use a higher salary figure instruction.  The

defendant cannot have it both ways: it cannot elect to use the $35,000 figure to limit its exposure,

and then when it loses at trial, argue a higher figure, such as $45,000, would have been more

appropriate because a lower number it might influence the jury's decision on liability.

Lastly, there is nothing before the Court to suggest that the instruction about the $35,000

figure either confused the jury or prejudiced the defendant.  The salary figure was one of many

factors that the jury was to consider and the jury was instructed to consider all of the evidence.

The jury is presumed to have followed these instructions,  Penry v. Johnson, 532 U.S. 782, 799

(2001)(citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)), and there is no reason to believe

they failed to do so.

4.  Conclusion

For these reasons, the defendant's motion for judgment notwithstanding the jury verdict

and a motion for a new trial based upon the salary issue is denied.

B.  Evidence of Willfulness

1.  Facts

The Court next addresses defendant's argument that the jury's verdict concerning

---

[5]The defendant argues that the use of $35,000 figure leads to an hourly rate of $13.46, and
the $45,000 figure leads to the hourly rate of $16.54, and that the $3.08 difference may have
influenced the jury when they were trying to determine if the sales managers were paid "little
more" than hourly employees.  Deft. Br. at 8-9; Deft. Reply Br. at 4.  The argument, however,
ignores the fact that there was no evidence offered concerning the specific hourly pay these
hourly employees received.

willfulness should be overturned.

During the trial, several Staples' Corporate officers testified, including: Connie Lennick, Staples' Vice-President of Human Resources for U.S. Retail, Matthew John Setterlund, Director of Merchandising Implementation, Andrew Seto, Staples' Director of Compensation, and Demos Parneros, President of Staples.  These individuals testified about the defendant's compliance with the FLSA and its classification of the sales managers as exempt from its overtime requirement.

      2.  <u>Summary of Arguments</u>

The defendant argues that the jury's verdict must be set aside as a matter of law because no reasonable jury could find that the defendant willfully violated the FLSA.  The defendant argues that the plaintiffs failed to prove that Staples knew its conduct was prohibited or showed reckless disregard as to whether or not it was prohibited because: (1) the plaintiffs did not provide any specific facts and documents that support the allegation of willfulness; (2) notwithstanding the fact that the burden was not on Staples to disprove willfulness, there was substantial evidence that Staples acted reasonably in determining its legal obligation based on the Time and Motion Studies, the Work Sampling Studies, the 2004 Analysis of Sales Manager Classification, and the findings of the Observation and Self-Reporting Studies, which demonstrated that sales managers were in fact working as managers; and (3) a review of all the evidence, including the understanding of Staples personnel, the work sampling studies, and Dr. Shah's studies, provided no reasonable argument that Staples willfully violated the FLSA.

In response, the plaintiffs argue that Staples' motion must be denied because there was substantial evidence demonstrating that defendant willfully violated the FLSA.  Specifically: (1) Staples' reckless disregard for the FLSA was evidenced by the testimony of many witnesses,

specifically the testimony of Andrew Seto, Staples' Director of Compensation.  Plaintiffs contend that Seto's testimony established that: (a) Staples' Audit was not designed to discover the type of work Staples sales managers actually performed because Staples did not interview any sales managers as a part of their Audit, and notwithstanding the fact that Seto conceded in his testimony that Staples needed to look at the job actually performed by sales managers, not merely the sales manager job description, to determine whether it complied with the FLSA; and (b) Staples' inaction rises to the level of reckless disregard rather than simply carelessness because Staples assigned this critical audit to Mr. Seto with no established protocol and requirement for follow-up as evidenced by Seto's failure to alert supervisors or question anyone further after receiving inconsistent information from the audit, and (2) that Staples' reckless disregard for the FLSA was evidenced by its evasive corporate witnesses on other aspects of the FSLA, including whether Staples acted in good faith and how sales managers spend their time.  Plaintiff contends that the testimony of the corporate witnesses established that Staples turned a blind eye to the fact that its stores were systematically under-staffed and that sales managers spent most of their time performing hourly tasks.  The plaintiffs also argue that this conduct together with the jury's finding of willfulness entitles them to liquidated damages.  This subject will be discussed later in this Opinion.

In reply, the defendant argues that: (1) the plaintiffs bear the burden of proving that the defendant acted wilfully, not the defendant, (2) the amount of time spent on hourly tasks is not dispositive in determining executive exemption, and (3) there is ample evidence in the record that shows that the defendant did not willfully violate the FLSA.

3. <u>Analysis</u>

A "violation of . . . the FLSA is willful if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA."  <u>Brock v. Richland Shoe Co.</u>, 799 F.2d 80, 81 (3d Cir.1986); <u>Caminiti</u>, 2007 WL 2226005 at *5; <u>see</u> <u>Albanese v. Bergen County, N.J.</u>, 991 F.Supp. 410, 425 (D.N.J. 1997); 5 C.F.R. § 551.104 (stating a"[w]illful violation means a violation in circumstances where the [employer] knew its conduct was prohibited by the [FLSA] or showed reckless disregard of the requirements of the [FLSA]").  In addition, a willful violation occurs when an employer is " 'evidently indifferent' to the FLSA's requirements." <u>Albanese</u>, 991 F.Supp. at 425 (citing <u>Martin v. Selker Bros., Inc.</u>, 949 F.2d 1286, 1296 (3d Cir.1991)).  The "word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional,'" <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1985) (citation omitted); <u>see also</u> <u>Brock</u>, 799 F.2d at 83 ("willfulness is akin to intentionality"), and the term "is generally understood to refer to conduct that is not merely negligent." <u>McLaughlin</u>, 486 U.S. at 133; <u>see also</u> <u>Pignataro v. The Port Authority of New York and New Jersey</u>, Civ. No. 04-CV-1767, 2008 WL 3582799, * 2 (D.N.J. Aug. 11, 2008).  An employer shows "[r]eckless disregard [for] the requirements of the Act [when he] fail[s] to make adequate inquiry into whether conduct is in compliance with the [FLSA]." 5 C.F.R. § 551.104. Plaintiffs can show willfulness by demonstrating that either the defendant knew its conduct was prohibited by the FLSA or showed a reckless disregard for its requirements or did not make adequate inquiry into exactly what the FLSA requires. <u>Bull v. United States</u>, 68 Fed. Cl. 212, 272-73 (Fed. Cl. 2005)(citing 5 C.F.R. § 551.104); <u>Falzo v. County of Essex</u>, Civ. No. 03-1922, 2008 WL 2064811, *8 (D.N.J. May 14, 2008).

-21-

Here, the Court cannot find there is no legally sufficient evidentiary record upon which the jury could reasonably conclude that the defendant willfully violated the FLSA.  Whether or not the Court may reach a different conclusion is not the test because "[a] jury verdict must be upheld unless 'there is no legally sufficient evidentiary basis for a reasonable <u>jury</u> to find' as it did." <u>Vadie v. Mississippi State Univ.</u>, 218 F.3d 365, 372 (5th Cir. 2000)(emphasis added)(quoting Fed.R.Civ.P. 50(a)(1)).  Indeed,  "'[e]ven if this court would reach a different conclusion as trier of fact, "we are not free to reweigh the evidence or to re-evaluate credibility of witnesses.'" <u>Brown v. Kinney Shoe Corp.</u>, 237 F.3d 556, 564 (5th Cir. 2001)(quoting  <u>Hiltgen v. Sumrall</u>, 47 F.3d 695, 699 (5th Cir.1995)).

Applying the standard under Rule 50, the verdict concerning willfulness must stand. First, the record indicates that Staples' internal studies revealed that upper management knew that its sales managers spent more than half of their time on hourly tasks yet the defendant did not take any meaningful steps to address it.  Mr. Setterlund was responsible for conducting the sale manager studies from 2000 to 2004 at numerous Staples stores.  Tr. dated Feb. 3, 2009 at 15.98.  Although Mr. Setterlund testified that he was unable to provide details about the studies' findings since he did not have any of them with him at trial, the evidence offered from the studies in fact showed that sales managers on average did more hourly tasks than managerial tasks.  <u>Id.</u> at 15.95-15.105.  For instance, Mr. Setterlund's 2002 study showed sales managers spent 65% of their time on hourly tasks.  <u>Id.</u> at 15.141, 15.146-15.147.  The 2003 study showed managers spent 61% of their time doing hourly tasks. Pl. Ex. 86 at 11.  The 2004 study showed managers spending significant time on hourly tasks such as cashiering and stocking.  Tr. dated Feb. 3, 2009 at 15.159.  Although Mr. Setterlund testified that subject of the studies were "abnormal" stores in

that they were not how a prototypical Staples store would operate, see, e.g., Tr. dated Feb. 3, 2009 at 15.134:14-17, the jury knew this fact and was entitled to give this fact whatever weight it deemed appropriate.  Thus, their atypical status was a factor available to the jury and it goes to the weight the jury gave to these studies.  From these studies and other evidence, the jury could find that upper management had information about the time sales managers spent on various tasks.  One other source was James Guillemette, Staples' Director of Operations.  Mr. Guillemette testified that he was a former merchandising manager, a position he described as similar to a sales manager, and had knowledge of the daily tasks performed by such employees. Tr. dated Jan. 20, 2009 at 6.5-6.7.  He testified that, when he held that position, he spent approximately 48% of his time doing hourly tasks of stocking and direct customer service.  Id. at 6.8-6.9.  Mr. Guillemette further testified  that when other hourly tasks such as sweeping, mopping, and cashiering were factored in, these sales managers would spend anywhere between 50% and 62% of their time on hourly tasks.  Id. at 6.44-6.45.  Although there is no stated percentage of time under the FLSA that automatically requires managers to be paid on an hourly basis, a reasonable jury may find that a manager who spends more than half of his or her time on hourly tasks does not have management as his or her primary duty.  As such, the evidence before the jury was sufficient to allow them to reasonably conclude that the Staples upper management were aware that the sales managers spent a majority of their time performing hourly tasks but they were not paid overtime.

Second, the jury had sufficient evidence to find that the defendant's self-audit was insufficient to show compliance with the FLSA.  Andrew Seto, Staples' Director of Compensation, testified that Staples conducted an FLSA audit in 2004 to ascertain how Staples

store managers spent their time and to ensure compliance with a change to the FLSA.  Tr. dated

Feb. 4, 2009 at 16.63-16.67, 16.82-16.84.  Mr. Seto, however, interviewed only four general

managers for approximately one hour each about how sales managers spent their time.  Id. at

16.66-16.67.  At trial, he was asked:

> Q: . . .Do you think that talking to four people is a fair representative? Sir?
> A: I believe that was fair.
> Q: Do you think it was representative?
> A: I believe that it was representative among the sales line stores that we had,
> sure.
> Q: Do you believe it was representative of the 1500 stores?
> A: Yes, at the time, yes. That's what we wanted to do, try to get that cross section,
> given that we had a limited amount of time in order to complete the audit.
> Q: You had a limited amount of time to complete the audit. You didn't tell us that.
> Would you tell us why you had a limited amount of time to complete the audit?
> A: The regulations had just been updated. That went into effect, so we tried to
> reach out to as many people as we can within that time period.
> Q: What time period?
> A: In the summer of 2004, or spring, summer of 2004.
> Q: Take a look at the dates on your FLSA audit. Do you have it in front of you?
> A: Yes.
> Q: You talked to everybody in the span of one day, didn't you?
> A: Yes, for these four interviews, yes.
> Q: Those are the only four interviews you did, sir. Did somebody tell you you've
> got to get this important project done, to be in compliance with the federal law,
> done in a one-day time period?
> A: No. The one day was not anything -- part of that.
> Q: When you told us that you had to get it done in the time
> period allowed, what were you talking about?
> A: Well, when the regulations were updated, we had to be able
> to conduct our review so that -- and draw any conclusions out of that in a fairly
> timely manner so that we could take action after that.

Id. at 16.80-16.82.

This exchange, among other things, provided sufficient evidence for the jury to find that

the 2004 audit was hastily conducted and superficial.  Seto testified that he did not contact any of

the 1500 sales managers or former sales managers, but rather, only interviewed four general

-24-

managers.  Id.  Moreover, the purported audit was conducted in one day.  Given the limited information upon which the self-described "audit" was based and the superficial method used to collect the information, a reasonable jury could conclude that the audit was nothing more than minimal attempted compliance with the FLSA, and in light of other information upper management had concerning the tasks sales managers actually performed at the time of the "audit," a reasonable jury had sufficient evidence to find that the defendant "showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." Brock v. Richland Shoe Co., 799 F.2d 80, 81 (3d Cir.1986).

Third, the evidence showed that employee complaints placed the defendant on notice about possible FLSA violations and that the defendant neither investigated nor cured the complaints.  Ms. Lennick testified that, as Vice President of HR, it is within her area of responsibility to know why sales managers left Staples but she could not provide such information, Tr. dated Jan. 26, 2009 at 9.141, because exit surveys were not done and she did not bring data reflecting whether or not employees agreed that the actual job duties were as described in the job description. Id. at 9.142-9.143.  When asked what she had done to address the complaints of the sales managers, Ms. Lennick testified that they made sure that people were proficient in their job and that they understood their roles. Id. at 9.149.  Ms. Lennick did not testify that Staples examined how many hours sales managers actually worked nor had Ms. Lennick ever sought such information. Id.   In addition, William Bailey testified that Staples, to his knowledge, has no way of knowing how many sales managers quit because of too many hours. Tr. dated Jan. 15, 2009 at 24-25.  A reasonable jury could use this testimony, together with other evidence, to find that the defendant was aware of the tasks the sales managers performed,

the hours worked, and disregarded whether or not the tasks were hourly in nature and hence different from what one who held the management title should be doing.

Fourth, although not legally required to do so, there is nothing in the record that indicates the defendant sought guidance from the Department of Labor concerning its compliance with the FLSA despite challenges to its compliance with the overtime laws since as early as 1999. See Tr. dated Jan. 22, 2009 at 187. Ms. Lennick testified that she was unaware that the U.S. Department of Labor possesses information on how to conduct FLSA audits. Tr. dated Jan 26, 2009 at 9.187-9.189. Ms. Lennick further testified that she did not know about nor has she ever requested an opinion letter from the Department of Labor concerning an FLSA audit. Id. at 9.187-9.188. Interestingly, Ms. Lennick testified that she did not know that the Department of Labor permits businesses to contact them directly about the FLSA or any issues concerning wage laws. Id. at 9.188. Mr. Parneros also testified that he was not personally aware that the defendant is permitted to submit a request to the Department of Labor for an advisory opinion regarding FLSA compliance. Tr. dated Feb. 2, 2009 at 14.190. Lastly, Ms. Lennick testified that she never went to any outside sources to determine if Staples appropriately applied the FLSA. Tr. dated Jan. 26, 2009 at 9.192. Together with the other evidence, a reasonable jury could view the defendant's lack of effort to seek advice from the Department of Labor in light of the fact that it had been sued for noncompliance with the overtime laws as reflecting disregard for the FLSA. Cf. Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 908 (3d Cir. 1991)(observing that where an employer fails to take affirmative steps to inquire about the FLSA's requirements, the employer cannot be said to have acted in good faith.)

Finally, it is notable that defendant's own corporate departments did not communicate with each other on the subject of hours and tasks sales managers performed. Tr. dated Jan. 26.

2009 at 96.  Indeed, the testimony of the defendant's corporate representatives shows that they did not communicate with each other on subjects relevant to the FLSA.  Id.  For instance, the executives in human resources were not aware of studies done by their colleagues in the same or other departments.  Id.  A reasonable jury could find that such compartmentalization of information was done to ensure that no one individual or department could be accused of having sufficient information to question whether or not the company actually ensured that the sales managers were properly classified under the FLSA.  This compartmentalization therefore could provide evidence upon which the jury could reasonably conclude that the defendant willfully violated the FLSA.

      4.  Conclusion

For these reasons, the jury had sufficient evidence to reasonably conclude that the defendant's violation of the FLSA was willful.

    C.  Representativeness

The Court next examines defendant's argument that the testifying plaintiffs did not prove that they are representative of all sales managers.  A review of the record shows there was sufficient evidence adduced at trial from which a reasonable jury could find that the testifying plaintiffs were representative of the non-testifying plaintiffs.

      1.  Facts

During the five-week trial, plaintiffs presented the testimony of thirteen plaintiff sales managers: Brian Baca, Jeremy Biggs, Jonathan Scott Boone, Brian Bright, Sr., Jeffrey Ciotti, Edward Carter, Darrell Jerome Gaines, Judith Garrick, G'Nai George, Shannan McClausland, Monica Denise McDavid, Ronald Richard Stillman, and Brett Stone.  (collectively, the "sales managers").  These sales managers all testified that they held the position of sales manager with

Staples. Tr. dated Jan. 28, 2009 at 11.155 (testimony of Baca, B.); Tr. dated Jan. 21, 2009 at

7.165 (testimony of Biggs, J.); Tr. dated Jan. 16, 2009 at 80 (testimony of Boone, S.); Tr. dated

Jan. 21, 2009 at 7.48 (testimony of Bright, B.); Tr. dated Jan. 14, 2009 at 50 (testimony of Ciotti,

J.); Tr. dated  Jan. 15, 2009 at 95 (testimony of Gaines, D.J.); Tr. dated Jan. 16, 2009 at 14

(testimony of Garrick, J.), Tr. dated Jan. 22, 2009 at 8.66 (testimony of George, G.); Tr. dated

Jan. 21, 2009 at 7.6 (testimony of McCausland, S.); Tr. dated Jan. 15, 2009 at 42 (testimony of

McDavid, M.D.); Tr. dated Jan. 28, 2009 at 11.34 (testimony of Stillman, R.R.); Tr. dated Jan.

22, 2009 at 8.115 (testimony of Stone, B.).   While holding this position, these sales managers

worked over forty hours per week and did not receive any overtime pay.  Tr. dated Jan. 21, 2009

at 7.167, 7.171 (testimony of Biggs, J.); Tr. dated Jan. 16, 2009 at 80-81 (testimony of Boone,

S.); Tr. dated Jan. 21, 2009 at 7.48-7.50 (testimony of Bright, B.); Tr. dated Jan. 14, 2009 at 41

(testimony of Ciotti, J.); Tr. dated Jan. 15, 2009 at 95 (testimony of Gaines, D.J.); Tr. dated Jan.

16, 2009 at 14 (testimony of Garrick, J.), Tr. dated Jan. 22, 2009 at 8.66 (testimony of George,

G.); Tr. dated Jan. 21, 2009 at 7.8 (testimony of McCausland, S.); Tr. dated Jan. 15, 2009 at 40-

41 (testimony of McDavid, M.D.); Tr. dated Jan. 28, 2009 at 11.36 (testimony of Stillman, R.R.);

Tr. dated Jan. 22, 2009 at 8.115-8.116 (testimony of Stone, B.).

       Notwithstanding the "manager" title, these sales managers testified that they spent the

majority of their time performing non-exempt "hourly tasks."  Tr. dated Jan. 16, 2009 at 82

(testimony of Boone, S.); Tr. dated Jan. 21, 2009 at 7.71 (testimony of Bright, B.); Tr. dated Jan.

14, 2009 at 50 (testimony of Ciotti, J.); Tr. dated Jan. 15, 2009 at 98 (testimony of Gaines, D.J.);

Tr. dated Jan. 16, 2009 at 15 (testimony of Garrick, J.), Tr. dated Jan. 22, 2009 at 8.68 (testimony

of George, G.); Tr. dated Jan. 21, 2009 at 7.7 (testimony of McCausland, S.); Tr. dated Jan. 15,

2009 at 42, 46 (testimony of McDavid, M.D.); Tr. dated Jan. 28, 2009 at 11.56 (testimony of

Stillman, R.R.); Tr. dated Jan. 22, 2009 at 8.131 (testimony of Stone, B.).  These sales managers
testified that these hourly tasks included cashiering, unloading trucks, sweeping or mopping
floors, cleaning bathrooms, arranging products on shelves, and loading cardboard in a baler.  Tr.
dated Jan. 16, 2009 at 105, 110 (testimony of Boone, S.); Tr. dated Jan. 21, 2009 at 7.56, 7.63
(testimony of Bright, B.); Tr. dated Jan. 14, 2009 at 56-57, 58-60 (testimony of Ciotti, J.); Tr.
dated Jan. 15, 2009 at 107-108, 114, 119 (testimony of Gaines, D.J.); Tr. dated Jan. 16, 2009 at
25-30 (testimony of Garrick, J.), Tr. dated Jan. 22, 2009 at 8.68-8.69 (testimony of George, G.);
Tr. dated Jan. 21, 2009 at 7.4 (testimony of McCausland, S.); Tr.dated Jan. 15, 2009 at 44, 55,
62, 64, 67 (testimony of McDavid, M.D.); Tr. dated Jan. 28, 2009 at 11.43 (testimony of
Stillman, R.R.); Tr. dated Jan. 22, 2009 at 8.128-8.131 (testimony of Stone, B.).  Similarly, all
sales managers testified that they could not make final personnel decisions concerning hiring,
firing, or pay rates of associates.  Tr. dated Jan. 16, 2009 at 94-95 (testimony of Boone, S.); Tr.
dated Jan. 21, 2009 at 7.68 (testimony of Bright, B.); Tr. dated Jan. 14, 2009 at 67 (testimony of
Ciotti, J.); Tr. dated Jan. 15, 2009 at 98-99 (testimony of Gaines, D.J.); Tr. dated Jan. 16, 2009 at
20 (testimony of Garrick, J.), Tr. dated Jan. 22, 2009 at 8.75 (testimony of George, G.); Tr. dated
Jan. 21, 2009 at 7.18 (testimony of McCausland, S.); Tr. dated Jan. 15, 2009 at 57-58 (testimony
of McDavid, M.D.); Tr. dated Jan. 28, 2009 at 11.44 (testimony of Stillman, R.R.); Tr. dated Jan.
22, 2009 at 8.140 (testimony of Stone, B.).[6]

---

[6] These sales managers also testified that they could not change the store's layout plan,
the music played, or the thermostat.  Tr. dated Jan. 16, 2009 at 105, 112 (testimony of Boone,
S.); Tr. dated Jan. 21, 2009 at 7.74 (testimony of Bright, B.); Tr. dated Jan. 14, 2009 at 54, 69, 73
(testimony of Ciotti, J.); Tr. dated Jan. 15, 2009 at 106-107 (testimony of Gaines, D.J.); Tr. dated
Jan. 16, 2009 at 24 (testimony of Garrick, J.), Tr. dated Jan. 22, 2009 at 8.69 (testimony of
George, G.); Tr. dated Jan. 21, 2009 at 7.18-7.19 (testimony of McCausland, S.); Tr. dated Jan.
15, 2009 at 58-59 (testimony of McDavid, M.D.).  The restrictions on their authority alone would
not undermine a finding that they nonetheless had management as their primary duty.  These

In addition to the testimony of the sales managers, the Staples' corporate officials testified including, William L. Bailey, Jr., Director of Field Human Resources for U.S. Retail; Susan Hoyt, Executive Vice President of Human Resources; Deborah Moore, Human Resources Officer; and Demos Parneros, President of U.S. Stores.  These executives testified that all Staples sales managers across the country receive uniform training and have uniform job duties and responsibilities, Tr. dated Jan. 16, 2009 at 189-190 (testimony of Hoyt, S.); Tr. dated Jan. 29, 2009 at 12.145-12.147 (testimony of Moore, D.) sales managers cannot independently hire, fire, or transfer associates without the approval of their general managers or the Staples Human Resources Department, Tr. dated Jan. 15, 2009 at 76-83 (testimony of Bailey, W.L.); Tr. dated Jan. 16, 2009 at 188-189 (testimony of Hoyt, S.); Tr. dated Jan. 29, 2009 at 12.150-12.156 (testimony of Moore, D.), and could not exercise discretion concerning whether or not to conform to certain Staples policies, such as the policies establishing store layouts. Tr. dated Jan. 16, 2009 at 187 (testimony of Hoyt, S.); Tr. dated Jan. 29, 2009 at 12.147 (testimony of Moore, D.) Tr. dated Jan. 30, 2009 at 13.156 (testimony of Parneros, D.).

In addition to the live testimony, the deposition testimony of Scott Wood was read to the jury.  Mr. Wood was a non-party former sales managers who provided testimony about the jobs he performed and the hours he worked as a sales manager. His testimony was consistent with the testifying plaintiffs.  Tr. dated Jan. 16, 2009 at 206 (testimony of Wood, S. that he was a sales managers); Tr. dated Jan. 16, 2009 at 205-206 (testimony of Wood, S. that he worked 40 hrs, did not get over time); Tr. dated Jan. 16, 2009 at 228-229 (testimony of Wood, S. that he performed hourly tasks);  Tr. dated Jan. 16, 2009 at 220-221, 225-226, 235, 238 (testimony of Wood, S.

---

restrictions were legitimate for a store seeking national uniformity and have no bearing on the plaintiffs' ability to exercise non-managerial discretion concerning the day-to-day operations.

Regarding the types of hourly tasks he performed);  Tr. dated Jan. 16, 2009 at 235-236

(testimony of Wood, S. that he did not have the authority to change the store layout); Tr. dated

Jan. 16, 2009 at 215-216 (testimony of Wood, S. that he did not ave the authority to hire or fire

employees)[7].  In addition, Mr. Guillemette, Staple's Director of Operations, testified that when he

was a merchandise manager, which was the predecessor the sales manager position, he spent one-

third of his time stocking, id. at 6.9:7-10, fifteen percent of his time doing customer service, id. at

6.9:17-19, and was not permitted to change the pay of sales associates, id. at 6.10:22-24, or

discipline them without the approval of a general manager.  Id.

    2. Summary of Arguments

    Defendant argues that plaintiffs failed to meet their burden of proving that the hourly

work performed by testifying plaintiffs was representative of the non-testifying plaintiffs

because: (1) the testifying plaintiffs testified only to their individual work performed and not to

the primary duty of non-testifying plaintiffs, even though the relevant FLSA test is primary duty,

(2) there was no evidence that the experiences of the thirteen opt-in testifying plaintiffs were

similar to those of the entire population of Staples sales managers or that they were similar to the

non-testifying opt-in plaintiffs, (3) there was no evidence that the testifying plaintiffs had the

opportunity or ability to observe the work of non-testifying plaintiffs, (4) there is evidence that

not all sales managers primarily performed non-exempt tasks, (5) there was no evidence that

---

[7] The Court gave the following instructions to the jury before Mr. Wood's deposition
testimony was read to the jury: "[n]ow, Mr. Wood when he was deposed on January 24th, 2008,
he was a plaintiff in the action. He was a party. That was his status at that time. His testimony
is being offered for you to determine whether or not what he says supports or contradicts testimony
offered by the plaintiffs you are going to hear from. You already heard from some, and you will
hear from some others during the course of the case, so that is the purpose for which his
testimony is being offered." Tr. dated Jan. 16, 2009 at 197:8-16.

connected the testimony from Staples home office employees about certain policies applying to all sales managers, (6) the only evidence regarding the experiences of non-testifying sales managers indicated that their primary duty was management, (7) there was no testimony that the thirteen testifying plaintiffs were randomly selected or that the thirteen witnesses constituted a statistically significant sample from which a conclusion could be drawn that the experiences of the testifying plaintiffs were similar to those of non-testifying plaintiffs, (8) plaintiffs did not provide other evidence that Staples policies caused the experiences of non-testifying plaintiffs to be the same as the experiences of the testifying plaintiffs, (9) plaintiffs did not present evidence that representative testimony should be accepted because they did not show Staples failed to maintain or systematically caused records to be falsified, (10) "something more" than the individual anecdotal evidence of plaintiff opt-ins is required to establish a company-wide pattern or practice with respect to the primary duty or exempt status of sales managers, (11) plaintiffs did not present evidence showing that Staples policies caused the actual work experiences of non-testifying plaintiffs to be similar to the work experiences of the testifying plaintiffs, and (12) Staples presented substantial evidence that sales managers are exempt and plaintiffs presented no evidence that met the standard of representative evidence regarding the experiences of the non-testifying plaintiffs that rebutted Staples' showing.

In response, plaintiffs argue that: (1) defendant misstates the legal standard of representativeness because (a) defendant erroneously argues that plaintiffs must prove representativeness to a degree of statistical certainty, even though the FLSA case law precedent and this Court's ruling do not require this, (b) the Court ruled that evidence could be presented in multiple ways, and (c) the issue of how to address and view such testimony goes to weight, (2) overwhelming evidence demonstrates that the testifying plaintiffs were representative of the non-

testifying plaintiffs because: (a) the evidence shows all sales managers had the same job title, performed similar tasks, and were not paid overtime, (b) Staples' HR executives conceded that sales managers have uniform job duties, training, and policies and procedures that they follow across the country, (c) witness testimony evidenced the commonality of job duties and responsibilities of sales managers generally, (d) the testifying plaintiffs from various stores testified that they performed the same non-exempt duties, that they could not hire or fire, that their recommendations regarding changes in employment status were accorded little, if any, weight, they had little, if any, managerial discretion, and that the training they provided was created by corporate officials and administered by video or computer, (e) Staples' documents and witness testimony corroborated that sales managers were similarly situated and performed the same primarily non-exempt duties, (3) Staples did not introduce evidence showing that job duties and responsibilities differed qualitatively between plaintiffs and in fact defense witnesses did not testify to any qualitative variation with respect to job duties and responsibilities between the plaintiffs and all sales managers, (4) the jury is entitled to reject Staples evidence and find that the plaintiffs were similarly situated, (5) Johnson v. Big Lots, 561 F.Supp.2d 567 (E.D. La. 2008), is distinguishable because the qualitative job duties of opt-in plaintiffs did not vary and Staples never moved for decertification,[8] and (6) in the analogous case,  Morgan v. Family Dollar

---

[8]Whether a court has the authority to reconsider the question of decertification in an FLSA action post-trial remains an open question in this Circuit.  Indeed, this Court found only one case addressing this issue, which stated that "[t]he Court has not found a case that directly addresses a court's authority to re-visit the question of decertification after the conclusion of trial in an FLSA collective action."  Johnson, 561 F.Supp.2d at 571.  Despite this dearth of precedent on the subject, the Johnson court stated that courts had "an ongoing obligation to monitor the propriety of certification, in light of factual developments" and therefore determined that it was "proper to revisit the certification question [at the post-trial stage]."  Id.  In the absence of guiding precedent to the contrary, the Johnson court proceeded to utilize the same multi-factor test that is used during the post-discovery evaluation stage.  Id. at 573.  The Johnson court, having the benefit of a full evidentiary record, re-evaluated the differences in job duties, the

Stores, Inc., 551 F.3d 1233 (11th Cir. 2008), the court rejected defendants' "lack of

representativeness argument" and found that it was defendants burden to prove the exemption

and upheld the jury verdict because it was based on evidence of corporate documents and witness

testimony from both parties in addition to the representative testimony.

In reply, the defendant argues that: (1) the plaintiffs presented no evidence that the actual

experiences of the non-testifying plaintiffs were similar to those of the testifying plaintiffs, and

(2) the plaintiffs did not prove that the testifying plaintiffs and the non testifying plaintiffs were

similarly situated.

3.  Analysis

Section 216(b) of the FLSA permits an aggrieved employee to bring an action against an

employer "in any Federal or State court of competent jurisdiction . . . for and on behalf of himself

or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  For a collective

action to proceed to trial, the plaintiff must demonstrate that: (1) all prospective class members

are similarly situated; and (2) all members have affirmatively opted-in to the litigation.  Aquilino

v. The Home Depot, Inc., Civ. No. 04-4100, 2006 WL 2583563, *1 (D.N.J. Sept. 7, 2006).  Once

at trial, plaintiffs can rely on representative evidence to prove that the defendant's practices or

policies impacted similarly situated employees.  As the Hon. Anne E. Thompson observed:

> [r]epresentative testimony has been accepted in cases where (1) there is
> substantial other evidence to support an inference drawn from representative
> testimony, (2) the employer has systematically caused records to be falsified that

employer's individuated defenses, and procedural and fairness considerations.

Based upon the fact sensitive nature of the inquiry and the approach taken in Johnson, it
is proper to engage in a post-trial analysis of the record to ensure that the case properly proceeded
as a collective action under  29 U.S.C. § 216(b).  Indeed, this fact intensive nature of this inquiry
in the circumstances of this case is the reason why the Final Pretrial Order contemplated such an
application at or after trial. See Docket Entry. No. 539.

would otherwise be properly maintained, or (3) the [plaintiff] establishes a
uniform pattern or practice of wage methods, conditions, and hours encompassing
a class of employees. However, the Defendant may rebut the reasonableness of
any inferences which may be drawn by the testimony of witnesses.

Reich v. Chez Robert, Inc. 821 F.Supp. 967, 984 (D.N.J.1993) (internal citations omitted),

vacated on other grounds, 28 F.3d 401 (3d Cir. 1994).

Under the law of this Circuit, plaintiffs need not present testimony of every member of

the collective action to prove their case and recover damages.  Martin v. Selker Brothers, 949

F.2d 1286, 1298 (3d Cir. 1991)(stating that "it is not necessary for every single affected

employee to testify in order to prove violations or recoup back wages.  The testimony and

evidence of representative employees may establish prima facie proof of a pattern and practice of

FLSA violations");  Reich v. Gateway Press, Inc., 13 F.3d 685, 701-02 (3d Cir. 1994)(stating that

"not all employees need to testify in order to prove the violations or to recoup back wages.")  As

a result, the appellate court, like other courts, allow plaintiffs to present "representative

employees to prove violations with respect to all employees." Id. (collecting cases).  These

witnesses would testify about the job title, job description, job duties, work performed, the

number of hours worked, and the compensation received or not received for hours worked in a

week beyond forty hours. See Falcon v. Starbucks Corp., Civ. No. H-05-0792, 2008 U.S. Dist.

LEXIS 3024, *22-24 (S.D. Tex. Jan. 15, 2008).  The fact finder considers such testimony to

decide whether or not:

> work habits of non-testifying witnesses were sufficiently similar to testifying
> witnesses' . . [and]  allows the Court to draw reasonable inferences with regard to
> non-testifying employees at [defendant].  These inferences include the manner and
> amount of payment to employees, the number of hours employees worked, and the
> employees' costs for uniforms and maintenance.

Id. (quoting McLaughlin v. DialAmerica Marketing, Inc., 716 F.Supp. 812, 824 (D.N.J. 1989)

-35-

Even if there are dissimilarities between the descriptions the representative plaintiffs may provide, this alone does not preclude the admissibility of such testimony.  Pegasus Consulting Group v. Administrative Review Bd. for the Dept. of Labor, Wage and Hour Div., Employment, Civ. No. 05-5161, 2008 WL 920072,  *18 (D.N.J. March 31, 2008); see also Johnson, 561 F.Supp.2d at 573 -74 (stating that "the similarly situated standard of § 216(b) of the FLSA does not require that plaintiffs be identical." )(citing Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir.1996)).   In this collective action, the plaintiffs bear the burden of proving that they are similarity situated to other members of the collective action, that the defendant had a pattern and practice concerning compensation, and that the pattern and practice violated the FLSA.  As the Hon. Freda Wolfson observed, "the burden is not an onerous one. It is met with respect to a particular employee 'if it is proved that the employee has in fact performed work for which he is improperly compensated and if the employee produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. (quoting Reich, 13 F.3d at 701).  In this regard, the jury must consider whether or not the 'opt-ins' to the class are similarly situated and if they have "put on representative evidence for purposes of the FLSA." De Asencio v. Tyson Foods, Inc., 500 F.3d 361, 366 (3d Cir. 2007) (noting that the jury was specifically asked whether or not the "plaintiffs had . . . provided representative evidence that [the activities at issue] are work  for purposes of the FLSA").  Thus, the jury may consider all of the evidence to determine whether or not the plaintiffs have shown the testifying and non-testifying employees held the same job, performed similar duties, were compensated in the same way, and impacted by the same company practice or policy.

Here, the evidence adduced at trial reveals that the testifying plaintiffs are similarly situated to the non-testifying plaintiffs and hence their testimony is representative.  First, the

testimony of the testifying plaintiffs showed that the plaintiffs were sales manager with Staples and worked in a Staples retail store.[9]  Second, the evidence shows these sales managers worked over forty hours per week and did not receive any overtime pay.[10]   In fact, the parties specifically stipulated that "Staples has not paid overtime to sales managers for any time they may have worked in excess of 40 hours a week per workweek."  Tr. Dated Feb. 17, 2009 at 44:7-9.  Third, notwithstanding the "manager" title, the sales managers who testified stated that they spent the majority of their time completing non-exempt "hourly tasks."[11]  These hourly tasks included cashiering, unloading trucks, sweeping or mopping floors, cleaning bathrooms, arranging products on shelves, and loading cardboard in a bailer.[12]   Fourth, the sales managers testified that

---

[9]Tr. dated Jan. 28, 2009 at 11.155 (testimony of Baca, B.); Tr. dated Jan. 21, 2009 at 7.165 (testimony of Biggs, J.); Tr. dated Jan. 16, 2009 at 80 (testimony of Boone, S.); Tr. dated Jan. 21, 2009 at 7.48 (testimony of Bright, B.); Tr. dated Jan. 14, 2009 at 50 (testimony of Ciotti, J.); Tr. dated Jan. 15, 2009 at 95 (testimony of Gaines, D.J.); Tr. dated Jan. 16, 2009 at 14 (testimony of Garrick, J.), Tr. dated Jan. 22, 2009 at 8.66 (testimony of George, G.); Tr. dated Jan. 21, 2009 at 7.6 (testimony of McCausland, S.); Tr. dated Jan. 15, 2009 at 42 (testimony of McDavid, M.D.); Tr. dated Jan. 28, 2009 at 11.34 (testimony of Stillman, R.R.); Tr. dated Jan. 22, 2009 at 8.115 (testimony of Stone, B.).

[10]Tr. dated Jan. 21, 2009 at 7.167, 7.171 (testimony of Biggs, J.); Tr. dated Jan. 16, 2009 at 80-81 (testimony of Boone, S.); Tr. dated Jan. 21, 2009 at 7.48-7.50 (testimony of Bright, B.); Tr. dated Jan. 14, 2009 at 41 (testimony of Ciotti, J.); Tr. dated Jan. 15, 2009 at 95 (testimony of Gaines, D.J.); Tr. dated Jan. 16, 2009 at 14 (testimony of Garrick, J.), Tr. dated Jan. 22, 2009 at 8.66 (testimony of George, G.); Tr. dated Jan. 21, 2009 at 7.8 (testimony of McCausland, S.); Tr. dated Jan. 15, 2009 at 40-41 (testimony of McDavid, M.D.); Tr. dated Jan. 28, 2009 at 11.36 (testimony of Stillman, R.R.); Tr. dated Jan. 22, 2009 at 8.115-8.116 (testimony of Stone, B.).

[11] Tr. dated Jan. 16, 2009 at 82 (testimony of Boone, S.); Tr. dated Jan. 21, 2009 at 7.71 (testimony of Bright, B.); Tr. dated Jan. 14, 2009 at 50 (testimony of Ciotti, J.); Tr. dated Jan. 15, 2009 at 98 (testimony of Gaines, D.J.); Tr. dated Jan. 16, 2009 at 15 (testimony of Garrick, J.), Tr. dated Jan. 22, 2009 at 8.68 (testimony of George, G.); Tr. dated Jan. 21, 2009 at 7.7 (testimony of McCausland, S.); Tr. dated Jan. 15, 2009 at 42, 46 (testimony of McDavid, M.D.); Tr. dated Jan. 28, 2009 at 11.56 (testimony of Stillman, R.R.); Tr. dated Jan. 22, 2009 at 8.131 (testimony of Stone, B.).

[12] Tr. dated Jan. 16, 2009 at 105, 110 (testimony of Boone, S.); Tr. dated Jan. 21, 2009 at 7.56, 7.63 (testimony of Bright, B.); Tr. dated Jan. 14, 2009 at 56-57, 58-60 (testimony of Ciotti,

they could not make human resource decisions, such as hiring, firing, or changing the pay rate of associates.[13]

Fifth,  the deposition testimony of one non-party corroborated the testimony of testifying plaintiffs concerning job duties, work performed, and hours worked.[14]  In addition, Mr. Guillemette, Staple's Director of Operations, testified that when he was a merchandise manager, which is a predecessor to the sales manager job, he spent a one-third of his time stocking, Tr. dated Jan. 20, 2009 at 6.9:7-10, fifteen percent of his time doing customer service, id. at 6.9:17-19, was not permitted to lower pay or increase the pay of sales associates, id. at 6.10:22-24, or discipline them without the approval of a general manager.  Id.

Sixth, the testimony of the defendant's corporate officers shows that all plaintiffs were similarly situated.  Several Staples corporate officers testified at trial.  These executives testified that all Staples sales managers across the country receive uniform training and have uniform job

---

J.); Tr. dated Jan. 15, 2009 at 107-108, 114, 119 (testimony of Gaines, D.J.); Tr. dated Jan. 16, 2009 at 25-30 (testimony of Garrick, J.), Tr. dated Jan. 22, 2009 at 8.68-8.69 (testimony of George, G.); Tr. dated Jan. 21, 2009 at 7.4 (testimony of McCausland, S.); Tr. dated Jan. 15, 2009 at 44, 55, 62, 64, 67 (testimony of McDavid, M.D.); Tr. dated. Jan. 28, 2009 at 11.43 (testimony of Stillman, R.R.); Tr. dated Jan. 22, 2009 at 8.128-8.131 (testimony of Stone, B.).

[13] Tr. dated Jan. 16, 2009 at 94-95 (testimony of Boone, S.); Tr. dated Jan. 21, 2009 at 7.68 (testimony of Bright, B.); Tr. dated Jan. 14, 2009 at 67 (testimony of Ciotti, J.); Tr. dated Jan. 15, 2009 at 98-99 (testimony of Gaines, D.J.); Tr. dated Jan. 16, 2009 at 20 (testimony of Garrick, J.), Tr. dated Jan. 22, 2009 at 8.75 (testimony of George, G.); Tr. dated Jan. 21, 2009 at 7.18 (testimony of McCausland, S.); Tr. dated Jan. 15, 2009 at 57-58 (testimony of McDavid, M.D.); Tr. dated Jan. 28, 2009 at 11.44 (testimony of Stillman, R.R.); Tr. dated Jan. 22, 2009 at 8.140 (testimony of Stone, B.)

[14] Tr. dated Jan. 16, 2009 at 206 (testimony of Wood, S. that he was a sales managers); Tr. dated Jan. 16, 2009 at 205-206 (testimony of Wood, S. that he worked 40 hrs, did not get over time.) ; Tr. dated Jan. 16, 2009 at 228-229 (testimony of Wood, S. that he performed hourly tasks.);  Tr. dated Jan. 16, 2009 at 220-221, 225-226, 235, 238 (testimony of Wood, S. regarding the types of hourly tasks he performed).  Tr. dated Jan. 16, 2009 at 235-236 (testimony of Wood, S. that he did not have the authority to change the store layout); Tr. dated Jan. 16, 2009 p.215-216 (testimony of Wood, S. that he did not ave the authority to hire or fire employees).

duties and responsibilities. Tr. dated Jan. 16, 2009 at 189-90 (testimony of Hoyt, S.); Tr. dated Jan. 29, 2009 at 12.145-12.147 (testimony of Moore, D.).  These executives also testified that sales managers cannot independently hire, fire, or transfer associates without the approval of their general managers or the Staples Human Resources Department. Tr. dated Jan. 15, 2009 at 76-83 (testimony of Bailey, W.L.); Tr. dated Jan. 16, 2009 at 188-189 (testimony of Hoyt, S.); Tr. dated Jan. 29, 2009 at 12.150-12.156 (testimony of Moore, D.).  Furthermore, these executives testified that sales managers could not exercise discretion concerning whether or not to conform to certain Staples policies, such as the policies establishing store layouts. Tr. dated Jan. 16, 2009 at 187 (testimony of Hoyt, S.); Tr. dated Jan. 29, 2009 at 12.147 (testimony of Moore, D.) Tr. dated Jan. 30, 2009 at 13.156 (testimony of Parneros, D.). As such, the evidence at trial shows that the employment settings of and restrictions on all sales managers were similar.

Seventh, the defendant offered the same defense to all of the plaintiffs' misclassification claims. During the trial, the defendant maintained that each plaintiff was exempt because they were managers and their primary duty was to engage in management tasks.  Relatedly, the defendant's steadfastly maintained that, if the plaintiffs were engaged in hourly tasks for the majority of their time, then they were not doing their jobs properly.  As such, the evidence at trial showed that the defendant engaged in a unified defense strategy against all plaintiffs.

Thus, there was sufficient evidence for the jury to conclude that all plaintiffs were similarly situated and that the testifying plaintiffs were representative of all similarly situated non-testifying plaintiffs.  The plaintiffs properly offered their own accounts of their work at Staples and the jury credited it and apparently found that performance problems some of these plaintiffs had were insufficient to render such employees dissimilar from others who held the same management position.

Moreover, there was no legal requirement that the group of testifying plaintiffs reflect a statistically significant sample for the jury to consider their testimony and render conclusions. The number who testified is only one factor.  A reasonable jury could easily find that the number of plaintiffs who testified was sufficient, particularly in light of: (1) Staples admission that all sales managers had the same duties, (2) Staples' acknowledgment that some of tasks performed were hourly in nature, and (3) witnesses who were former sales managers or held a similar position described their hours and job duties in the same way as the thirteen testifying plaintiffs. The jury heard considered all of the evidence and the evidence supported a reasonable jury's view that the testifying plaintiffs provided testimony representative of other sales managers. Therefore, the record was not "critically deficient of that minimum quantity of evidence from which the jury might reasonably," Raiczyk, 377 F.3d at 269, find the testifying plaintiffs were representative of similarly situated non-testifying plaintiffs.

4.  Conclusion

For all these reasons, the defendant's Rule 50 motion on the issue of representativeness is denied.

D. Liquidated Damages

1.  Facts

Because the jury concluded that the defendant willfully violated the FLSA, the plaintiffs seek an award of liquidated damages.

2.  Summary of Arguments

Plaintiffs argue that since the jury found that Staples willfully violated the FLSA, the Court must award liquidated damages in the amount equal to jury's verdict because: (1) Section 216 (b) of the FLSA places the burden on the employer to prove its good faith defense and

defendant failed to do so, and (2) where a jury finds that the employer willfully violated the FLSA, a judge is precluded from finding that the employer acted in good faith because the jury already considered the issue of good faith in its willfulness determination and a judge should not make findings contrary to or inconsistent with the jury's resolution.

In response, defendant argues that liquidated damages are unavailable here because the record shows that it acted in good faith because: (1) the plaintiffs all testified that they performed managerial tasks, (2) defendant conducted time and labor budget studies, (3) defendant conducted work sampling studies to ensure that the labor budget was sufficient, and (4) defendant conducted an internal audit in 2005.

### 3. Analysis

The FLSA entitles plaintiffs in certain cases to liquidated damages and states:

> [a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216; see also Caminiti v. County of Essex, N.J., Civ. No. 04-4276, 2007 WL 2226005, *6 (D.N.J. July 31, 2007) (quoting 29 U.S.C. § 216(b)). Liquidated damages is "a Congressional recognition that failure to pay the statutory minimum and overtime wages may be so detrimental to the maintenance of the minimum standard of living 'necessary for health, efficiency and general well-being of workers' that double payment must be made to compensate employees for losses they might suffer by not receiving their lawful pay when it was due." Brooks v. Village of Ridgefield Park, 185 F.3d 130, 137 (3d Cir. 1999); see also Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 (1945); Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir.1991). Thus, when an employer willfully violates the overtime wage provisions of the FLSA, the Act provides for payment of both unpaid wages and an equivalent amount of

mandatory liquidated damages. <u>See</u> 29 U.S.C. § 216(b); <u>Martin</u>, 940 F.2d at 907.  In practical

terms, Section 216(b) "double[s] the damages because it calls for "an additional equal amount as

liquidated damages." <u>Caminiti</u>, 2007 WL 2226005 at *6 (quoting 29 U.S.C. § 216(b)).

In a jury trial under the FLSA, the jury decides the question of willfulness for statute of

limitation purposes and the Court decides whether or not the employer has met its burden in

establishing the good faith defense to an award of liquidated damages.  As the court in <u>Davis v.

Mountaire Farms, Inc.</u>, Civ. No. 04-414, 2009 WL 159173, * 4 (D.Del. March 6, 2009),

observed:

> [w]illfulness . . . is relevant to two inquiries in FLSA cases: the maximum
> recovery period (the statute of limitations) and the court's award of liquidated
> damages . . . . Notably, in the statute of limitations context, willfulness is
> plaintiffs' burden. Defendants have the burden of proof of demonstrating good
> faith in the damages context. The court does not deem willfulness and a lack of
> good faith to be equivalents, but recognizes, in concurrence with the majority of
> Circuit Courts, that a finding of willfulness would preclude a finding of good
> faith.

<u>Id.</u> at * 4 (citing <u>Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.</u>, 515 F.3d 1150, 1166 (11th

Cir. 2008)(collecting authority and stating that "in an FLSA case a jury's finding in deciding the

limitations period question that the employer acted willfully precludes the court from finding that

the employer acted in good faith when it decides the liquidated damages question.")); <u>see also</u>

<u>Caminiti</u>, 2007 WL 2226005 at *7 (stating that "holding that a finding of "good faith" for

purposes of liquidated damages precludes a finding of willfulness for purposes of a three year

statute of limitations period, and vice versa")(quoting <u>Burgess v. Catawba County</u>, 805 F.Supp.

341, 351 (W.D.N.C.1992)).

The jury's finding that the employer wilfully violated the FLSA necessarily precludes the

Court from finding that the employer acted in good faith.  A finding of willfulness in this context

means that this jury found that the defendant knowingly or recklessly disregarded its FLSA

obligations, which includes failing to adequately inquire into its obligations or ensure

compliance.  See Falzo v. County of Essex, Civ. No. 03-1922,  2008 WL 2064811, *8 (D.N.J.

May 14, 2008)(stating that an employer wilfully violates the FLSA "'when the employer either

knew or showed reckless disregard for the matter of whether its conduct was prohibited by the

FLSA.'")(citing Caminiti, 2007 WL 2226005, at *5 (quotations omitted)).  The "good faith

requirement . . . requires that the employer have an honest intention to ascertain and follow the

dictates of the Act."  Cahill v. City of New Brunswick, 99 F.Supp.2d 464, 476 (D.N.J.

2000)(citing Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907-08 (3d Cir.1991))(quoting

Williams v. Tri-County Growers, Inc., 747 F.2d 121, 129 (3d Cir.1984)); Marshall v. Brunner,

668 F.2d 748, 753 (3d Cir.1982).  To show good faith, "the defendant must show that [it] took

affirmative steps to ascertain the Act's requirements but nonetheless violated its provisions."

Morton, 940 F.2d at 907-08.  The conduct is judged under an objective standard and thus the

"absence of affirmative evidence that the employer willfully intended to avoid compliance with

the FLSA" does not meet the objective component of the good faith requirement.  Id. at 909

(citations omitted).  In short, good faith means that the employer attempted to comply and due to

mistake or inadvertence failed to do so.  A finding of willfulness means there were intentional

acts or reckless disregard that is inconsistent with the legal obligation or a lack of care regarding

the need to comply and hence the willful actor could not be one who acts in good faith.  The

jury's finding of willfulness therefore embodies a finding that the defendant, at a minimum,

disregarded its known legal duty.  Since the Court found that a reasonable jury had sufficient

evidence upon which to find a willful violation, the Court cannot find that defendant acted in

good faith because to do so would be inconsistent with the jury's conclusion.  As such, the jury's

finding of wilfulness necessarily precludes the Court from finding that the defendant acted in good faith.  Therefore, an award of liquidated damages is required.  Davis, Inc., 2009 WL 159173 at * 4.

       4. Conclusion

For all of these reasons, the plaintiffs are entitled to an award of liquidated damages.

    E. Prejudgment Interest

       1. Facts and Summary of Arguments

By way of letter dated April 6, 2009, the plaintiffs asked the Court to add prejudgment interest to the jury's award.  In a response dated April 20, 2009, the defendant argues that prejudgment interest is improper because: (1) prejudgment interest is unavailable in FLSA cases as a matter of law, (2) the numbers plaintiffs used to calculate the prejudgment interest is incorrect, and (3) the date plaintiffs have used for calculating prejudgment interest is incorrect. In reply, the plaintiffs argue that, although the Supreme Court and the Court of Appeals for the Third Circuit have held that prejudgment interest should not be awarded in addition to liquidated damages, prejudgment interest should nevertheless be awarded because: (1) the Court of Appeals has not expressly decided the propriety of prejudgment interest on the unpaid wages part of an award nor ruled that it is penal under the FLSA, (2) under the ADEA, an Act with similar damages provisions to the FLSA, a court may award both prejudgment interest and liquidated damages, and (3) plaintiffs' calculation of prejudgment interest is proper.

       2. Analysis

While a successful plaintiff under the FLSA may be awarded prejudgment interest, Brock v. Richardson, 812 F.2d 121, 127 (3d Cir. 1987), or liquidated damages, Potence v. Hazleton Area School Dist., 357 F.3d 366, 372 (3d Cir. 2004), a court cannot award both.  Brooklyn Sav.

Bank v. O'Neil, 324 U.S. 697, 715 (1945); Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 910

-911 (3d Cir. 1991); Krause v. Cherry Hill Fire Dist., 13 969 F.Supp. 270, 279 (D.N.J. 1997).  A

court may not award both prejudgment interest and liquidated damages because "[t]he purpose of

an award of liquidated damages under section 16(b) of the Act, 29 U.S.C. § 216(b), is to

compensate employees for any losses caused by delayed receipt of overtime wages they are due .

. . . [and] [] prejudgment interest serves the same purpose . . . ."  Martin, 940 F.2d at 910 -911;

see also Brooklyn Sav., 324 U.S. at 715.  Therefore, an FLSA liquidated damage award is

compensatory and serves the same function as prejudgment interest.  Indeed, in Brooklyn Sav.,

324 U.S. at 715, the Supreme Court held that FLSA liquidated damages are not penal but rather

compensate the plaintiff for the impact of not having access to the money.  See also Martin v.

Cooper Elec. Supply Co., 940 F.2d 896, 910 -911 (3d Cir. 1991).  Thus, liquidated damages

under the FLSA serve the same purpose as prejudgment interest.  To award FLSA plaintiffs both

liquidated damages and prejudgment interest would therefore result in a windfall.

Moreover, the plaintiffs presented no legal authority to support their assertion that both

prejudgment interest and liquidated damages may be awarded in one FLSA case.  Indeed, the

main case plaintiffs cite for this proposition, Starceski v. Westinghouse Elec. Co., 54 F.3d 1089,

1102-03 (3d Cir. 1995), involves the Age Discrimination Employment Act ["ADEA"].[15]  The

Starceski court specifically acknowledged that not all remedies available under the ADEA exist

under the FLSA.  In this regard, the Starceski court stated that "we reject the reasoning of those

courts that believe Congress intended to incorporate into the ADEA all of the damage provisions

---

[15]None of the other cases that the plaintiffs cite involved an FLSA case in which a court awarded both liquidated damages and prejudgment interest.  Rather, each FLSA case the plaintiffs cite confirms that a court may award prejudgment interest in the absence of a liquidated damages award.  Brock v. Richardson, 812 F.2d 121, 125 (3d Cir.1987)(no liquidated damages awarded); Pignataro v. The Port Authority of New York and New Jersey, Civ. No. 04-1767, 2008 WL 3582799, *4 (D.N.J. Aug. 11, 2008).

of the Fair Labor Standards Act ("FLSA"), including its prohibition of concomitant awards for pre-judgment interest and liquidated damages." Starceski, 54 F.3d at 1102-03 (citing Brooklyn Sav., 324 U.S. at 715).  Continuing, the appellate court explained that, in ADEA cases, "liquidated damages are punitive in nature and designed to deter willful conduct.  If awards of pre-judgment interest are compensatory, and liquidated damages are punitive, a concomitant grant of both is appropriate because pre-judgment interest serves the statutory goal of making Starceski whole, i.e., it compensates him for the discriminatory wrong that he has suffered, while liquidated damages would punish Westinghouse, the wrongdoer, for its willful violation of the ADEA." Starceski, 54 F.3d at 1102.  In light of Brooklyn Sav. Bank, Martin, and Stareski, simultaneous awards of liquidated damages and prejudgment interest are not available to FLSA plaintiffs.  Therefore, plaintiffs' request for an award of prejudgment interest is denied.

## IV. CONCLUSION

For all of these reasons the defendant's motion under Rule 50 or in the alternative Rule 59 is denied, the plaintiff's motion for liquidated damages is granted, and plaintiffs' application for prejudgment interest is denied.  A form of Order consistent with this Opinion and a judgment will be issued.


 s/Patty Shwartz
UNITED STATES MAGISTRATE JUDGE


Dated: May 11, 2009